# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Olga Simpson, individually and as**
**Mother and Next Friend of A.S., a minor**
**and Y.S., a minor, and S.S., a minor,**

      **Plaintiff,**

**v.**                              **Case No. 12-CV-2402**

**State of Kansas and Da'Von B. Brame,**

      **Defendants.**

## <u>MEMORANDUM & ORDER</u>

On October 17, 2011, defendant Da'Von B. Brame, a trooper with the Kansas Highway Patrol, stopped the vehicle that plaintiff Olga Simpson was driving based on his observation that plaintiff's minor child, a front-seat passenger, was not wearing a seat belt. Defendant Brame issued a citation to plaintiff for failure to wear her own seat belt and failing to secure her children in seat belts. After plaintiff tore up the citation, defendant Brame notified plaintiff that he was placing her under arrest for the seat belt violations. During the arrest, which plaintiff resisted, plaintiff sustained injuries.

Plaintiff filed this action against defendant Brame alleging violations of 42 U.S.C. § 1983 for unlawful arrest in violation of the Fourth Amendment and excessive force in violation of the Fourth, Eighth and Fourteenth Amendments. Plaintiff also asserts against defendant Brame state law claims of false imprisonment, battery and intentional infliction of emotional distress. Plaintiff has sued the State of Kansas under the Kansas Tort Claims Act on the theory that the State is liable for the wrongful acts of defendant Brame acting within the scope of his

employment with the State and on the theory that the State negligently failed to train defendant Brame.

This matter is presently before the court on the parties' motions for summary judgment. Plaintiff moves for summary judgment (doc. 44) seeking a determination that Kansas law does not authorize a police officer to arrest a driver for adult or child seat belt violations because those violations are minor traffic infractions. Defendants move for summary judgment (doc. 46) on all of plaintiff's claims. As explained in more detail below, plaintiff's motion is denied and defendants' motion is granted in part and denied in part. To the extent defendants' motion is denied, however, the court dismisses those claims rather than granting summary judgment on those claims.[1]

## I.    Facts

Consistent with the relevant standard, the following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. However, where video and audio evidence of the traffic stop blatantly contradicts plaintiff's version of events, the court

---

[1] Defendants' motion to strike plaintiff's response to the motion for summary judgment and for sanctions for violations of a protective order is also pending before the court at this time. The court previously granted the motion in part (by ordering that certain attachments to the response be sealed) and retained the motion under advisement in part. With respect to the portion of the motion that was retained under advisement, defendants contend that the court should strike plaintiff's response in its entirety or sanction plaintiff based on her reference, in her response brief, to confidential matters in violation of the protective order. Plaintiff, however, has persuaded the court that any breach of the protective order was inadvertent. Moreover, the documents that are subject to the protective order have been sealed and defendants have not shown (or even argued) any prejudice or harm by virtue of plaintiff's discussion in her brief of information contained in those documents. In fact, defendants have submitted with their motion unsealed deposition excerpts which discuss at length the same confidential matters mentioned in plaintiff's response brief. The motion, then, is denied.

views the evidence in the light depicted by the videotape. *Scott v. Harris*, 550 U.S. 372, 380-82 (2007); *Thomas v. Durastanti*, 607 F.3d 655, 658 (10th Cir. 2010) (for purposes of summary judgment concerning traffic stop, court may rely on facts established by video capturing the event together with plaintiff's version of the remaining facts).

On October 17, 2011, plaintiff Olga Simpson was operating a motor vehicle in Johnson County, Kansas and transporting three of her minor children. Defendant Da'Von B. Brame, a trooper with the Kansas Highway Patrol, was traveling home in his patrol car at approximately 5:30pm when he passed plaintiff's vehicle and observed that the minor child in the front passenger seat of plaintiff's vehicle was not wearing a seat belt. According to defendant Brame, he observed the absence of a seat belt strap across the torso of the passenger and observed the seat belt buckle hanging by the passenger's head. Defendant Brame made a traffic stop of plaintiff's vehicle. As noted, there is a video recording (from the dashboard of defendant Brame's patrol car) of a significant portion of the stop and an audio recording of the entire stop from a microphone worn by defendant Brame. The traffic stop occurred on an entrance ramp to Shawnee Mission Parkway (a heavily traveled roadway, particularly during rush hour) and the video depicts that a steady flow of vehicles was passing quickly (in an effort to enter Shawnee Mission Parkway at the appropriate speed) right behind defendant Brame as he stood outside plaintiff's window. Plaintiff's vehicle was pulled over to the shoulder of the ramp.

Defendant Brame testified that he observed a minor child in the back seat of the vehicle attempting to secure her seat belt as he approached the car and that he then observed through the vehicle window that the child in the back seat of the vehicle was not wearing a seat belt. The video depicts defendant Brame looking through the window at close range and observing the

back seat of the vehicle. Defendant Brame further observed that plaintiff was not wearing a seat belt and plaintiff does not dispute that she was not wearing a seat belt. When he approached plaintiff, he asked her whether it was a "little too late to have them put on their seat belts now, don't you think?" Plaintiff responded that they were "just coming from school." Defendant Brame, in a calm but arguably condescending tone, explained to plaintiff that the school was far away and that the children needed to be secured in seat belts before plaintiff put the vehicle in gear. He then asked plaintiff for her license and registration and, while she was looking for those documents, he told plaintiff a story about a local mother whose young child was killed the prior weekend in an automobile accident because the child was not secured in a seat belt. After plaintiff apparently shrugged in response to the story, defendant stated, "Oh, you don't care, okay." He then told her that he cared about her children and her safety. Plaintiff began to become agitated and defendant Brame assured plaintiff that he was "not mad" at her (the video reflects that he was not raising his voice, but was clearly frustrated with plaintiff's attitude) and was merely providing the story as an example to plaintiff so that the same thing would not happen to her children. At that point, defendant Brame asked plaintiff to produce her license while she continued to look for proof of insurance because he did "not want to get hit" standing by her vehicle in light of the traffic on the entrance ramp. The video reflects that the traffic stop, up until this point, lasted less than two minutes.

Defendant Brame returned to his patrol car for several minutes while he ran her driver's license and prepared a citation. He then exited his vehicle and again approached plaintiff's vehicle. He asked her for her insurance card and she explained that while her insurance was current, the card in her vehicle had expired and she did not have the updated card in her vehicle.

Defendant Brame calmly advised her that he would not give her a citation for not having proof of insurance but advised her to place the new card in her vehicle as soon as possible. Defendant Brame then began to explain to plaintiff the Uniform Notice to Appear, stated that the citation was for "seat belt restraints," read the court date to her and explained that she could pay the fine by mail if she did not want to appear in court. Upon seeing the amount of the fine, plaintiff asked "Are you kidding me that it's this much?" She became upset, stating that she was a "single mom" working three jobs and that only one of her children was not "buckled up."[2] Defendant Brame repeatedly told plaintiff that he did not want to argue about the fine amount with her and he again attempted to explain the seriousness of plaintiff's decision not to secure her children in seat belts. Defendant Brame advised plaintiff that "the judge can help you out" if she appeared in court but that he did not want to continue to argue and risk getting hit. He then handed her the citation, told her to "have a safe day," and began walking back to his patrol car.

After taking two or three steps away from plaintiff's vehicle, defendant Brame heard plaintiff tear up the citation and plaintiff admits that she tore up the citation at that point. Defendant Brame then placed his hand on the door handle of plaintiff's vehicle door and stated, again in a calm voice, "Okay, go ahead and get out of the car." After pulling on the door handle, he repeated his instruction to exit the vehicle. Plaintiff ignored him. He then reached into the vehicle, unlocked the door and opened it. He repeated two more times his instruction to exit the vehicle, explaining that the seat belt violations were misdemeanors and that he was taking her to

---

[2] Plaintiff's minor children have each filed an affidavit stating that they were wearing seat belts at all relevant times, but the video clearly reflects plaintiff admitting to defendant Brame that one of her children was not buckled up. Moreover, defendants highlighted this portion of the video in their statement of facts (and, specifically, plaintiff's comment about her child) and plaintiff does not specifically controvert that fact.

jail. He then placed his hand on her wrist and asked her three more times to exit the vehicle. Plaintiff remained in the vehicle and, in response to defendant Brame's instructions, repeatedly told defendant Brame to "leave me now." Defendant Brame then gave plaintiff one final opportunity to exit the vehicle and warned her that he would remove her from the vehicle himself. The video depicts that plaintiff had more than 30 seconds from the time that defendant Brame first instructed her to exit the vehicle to do so on her own. Defendant Brame then pulled plaintiff out of the vehicle by the wrist while she resisted removal from the vehicle. She admitted in her deposition that she was "trying not to go." Defendant Brame then placed one hand on the back of plaintiff's neck, kept his other hand firmly on her wrist and moved her to the rear of the vehicle, where he then firmly guided her to the ground. He released plaintiff immediately when he realized that the vehicle was rolling forward down the entrance ramp and he moved back to the driver's side of the vehicle to secure the vehicle. At the same time, plaintiff stood up and returned to the driver's side of the vehicle. Once the vehicle was secure, defendant Brame held plaintiff by both arms from behind, told her to "get back" to the rear of the vehicle and moved plaintiff to the shoulder of the ramp.

The next portion of the stop took place outside the view of the video camera although it is captured on audio. Defendant Brame called for backup because plaintiff was "fighting" and told plaintiff to "stop resisting." Plaintiff testified that defendant Brame pushed her to the ground, placed his knee in her back, put his weight on her and placed her in handcuffs. She further states that defendant Brame picked her up by her handcuffs and lifted her off the ground by her arms after cuffing her. During this time, plaintiff is audibly upset. Approximately 40 seconds passed from the time defendant Brame moved plaintiff to the shoulder until the time he told her

6

to "get up" after cuffing her. Defendant Brame admits that he "wrestled" with plaintiff for approximately 30 seconds. Defendant Brame then moved plaintiff to the hood of his patrol car, where the video camera again picks up the incident, and plaintiff continued to struggle while defendant Brame kept his hand firmly on her bicep. She repeatedly demanded that defendant Brame remove his hands from her and repeatedly told defendant Brame that she was going to sue him and that "you're going to get it." At that point, an off-duty police officer from the City of Merriam stopped to offer assistance and, shortly thereafter, additional backup arrived on the scene. The video then depicts defendant Brame and another officer moving plaintiff behind defendant Brame's patrol car and walking her back to another patrol car. Plaintiff can be seen kicking defendant Brame on the way to the patrol car and can be heard repeatedly telling him to "get away" from her. Defendant Brame and the other officer placed plaintiff in the patrol car and she had no other contact with him. She was taken to jail, booked and released the following day. No charges were filed against her.

## II.     Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med-Systems, Inc.*, ___ F.3d ____, 2013 WL 4046470, at *4 (10th Cir. Aug. 12, 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, ___ F.3d at ___; 2013 WL 4046470, at *4 (quotation omitted). The nonmoving party is entitled to all reasonable inferences from the

record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue. *Id.*

## III. Constitutional Claims

Plaintiff has asserted § 1983 claims against defendant Brame for unlawful arrest and excessive force. Defendant Brame asserts that he is entitled to qualified immunity on plaintiff's § 1983 claims. Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law." *Thomas v. Durastanti*, 607 F.3d 655, 661 n.4 (10th Cir. 2010). When a defendant asserts qualified immunity at summary judgment, the "burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Courtney v. Oklahoma ex rel. Dep't of Public Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013) (quoting *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013)). The court maintains the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). If the plaintiff, however, fails to establish a violation of the law, then the court need not reach the issue of whether the law was clearly established. *Reynolds v. Powell*, 370 F.3d 1028, 1029 (10th Cir. 2004).

*A. Unlawful Arrest*

Plaintiff first contends that defendant Brame violated her Fourth Amendment right to be free from unlawful arrest. The thrust of plaintiff's claim is that the conduct for which she was arrested—failing to wear a seat belt and failing to secure her minor children in seat belts—are traffic infractions that are not arrestable offenses under Kansas law and that, accordingly, defendant Brame had no authority to arrest her. Defendant Brame, in turn, contends that plaintiff's conduct constitutes a misdemeanor under Kansas law that does subject her to arrest at the officer's discretion. For purposes of the Fourth Amendment, however, it matters not whether Kansas law prohibits an officer from arresting drivers who do not wear seat belts or who do not secure minor children in seat belts.[3]

In *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), the Supreme Court held that an officer may constitutionally arrest an offender for minor traffic offenses, such as failure to wear a seat belt, so long as the officer has probable cause to believe that the individual has committed the offense in his presence. *Atwater* involved the arrest of an individual for a misdemeanor seatbelt violation punishable only by a fine. *Id*. at 323. In *Virginia v. Moore*, the Court extended *Atwater* when it upheld the arrest of a driver for driving on a suspended license, despite state laws requiring the officers to issue a summons instead of making an arrest when handling such an infraction. 553 U.S. 164, 176 (2008) ("[W]arrentless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and . . . state restrictions do not alter the Fourth Amendment's protections."). The *Moore* Court

---

[3] As explained below in connection with plaintiff's state law claims, the court nonetheless readily concludes that the seat belt violations for which plaintiff was arrested are misdemeanors under Kansas law.

emphasized that "an arrest based on probable cause but prohibited by state law" is constitutional. *Id*. at 166.

In light of *Moore*, then, "if an arrest is otherwise reasonable, the fact that it is not for an 'arrestable' offense does not make it unconstitutional." *Thomas v. City of Peoria*, 580 F.2d 633, 637 (7th Cir. 2009). Applying *Moore* to this case, even assuming that the seat belt violations are not "arrestable" offenses under Kansas law, defendant Brame's arrest of plaintiff was not unconstitutional. It is undisputed by plaintiff that she was not wearing her seat belt in violation of K.S.A. § 8-2503 and that defendant Brame observed the violation. While plaintiff's minor children aver that they were wearing their seat belts at all times, the video clearly reflects plaintiff admitting to defendant Brame that one of her children was not wearing a seat belt. Moreover, defendant Brame personally observed the minor child in the front passenger seat not wearing her seat belt. Because defendant Brame had probable cause to believe that plaintiff committed the seat belt violations in his presence, the arrest does not violate the Fourth Amendment.

Relying on an isolated excerpt from defendant Brame's deposition, plaintiff alternatively insists that defendant Brame arrested plaintiff for tearing up the citation and not for the seat belt violations. As argued by plaintiff, arresting an individual for tearing up a citation is not reasonable for purposes of the Fourth Amendment. Plaintiff mischaracterizes the record. Taken as a whole, it is beyond dispute that defendant Brame arrested plaintiff for the seat belt violations—as evidenced by the arrest report which identify the specific statutes violated by plaintiff—only after plaintiff tore up the citation, indicating to defendant Brame that she did not take the issue seriously and did not intend to pay the citation or appear in court. So while it is

true that defendant Brame would not have arrested plaintiff but for the fact that she tore up the citation, it is not true that defendant Brame arrested plaintiff for tearing up the citation. In any event, the subjective intent of the officer concerning his reason for making the arrest cannot be used to invalidate an otherwise legitimate arrest. *United States v. Turner*, 553 F.3d 1337, 1344 (10th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004)). In *Devenpeck*, the Court rejected the argument that an officer's stated reason for arresting an offender must be "closely related" to the offense for which there is probable cause to arrest. *Courtney*, 722 F.3d at 1223. In other words, because defendant Brame undisputedly had probable cause to arrest plaintiff for the seat belt violation based on the facts that he personally observed, the arrest is valid regardless of defendant Brame's out-of-context deposition testimony that he arrested her for tearing up the citation.

Finally, plaintiff contends that defendant Brame, having decided to issue her a citation for the seat belt violations, was prohibited from then arresting her for those violations and no probable cause existed as to any "new" violations that might support the arrest. Plaintiff's argument relies on K.S.A. § 8-2106(e), which provides that if, at the discretion of the officer, the person charged with a misdemeanor gives a written promise to appear in court by signing the citation, then the officer "shall not take the person into physical custody." Putting aside the fact that plaintiff never signed the citation (defendant Brame did not request that she do so), plaintiff's argument fails in any event because, under *Atwater* and *Moore*, a state law that arguably prohibits an arrest has no bearing on the constitutionality of the arrest.

Because defendant Brame's arrest of plaintiff was supported by probable cause, the arrest is constitutional under the Fourth Amendment and defendant Brame is entitled to qualified

immunity.  The court, then, does not reach the issue of whether the law was clearly established. Summary judgment in favor of defendant Brame is granted.


B.      *Excessive Force*

Plaintiff's excessive force claim is asserted under the Fourth, Eighth and Fourteenth Amendments.  As a matter of law, plaintiff, as an arrestee, may not assert an excessive force claim under the Eighth Amendment.  Under *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989), any claims for excessive force on the part of government officials during the course of an arrest must be analyzed under the Fourth Amendment.  Indeed, it is well-settled that the Eighth Amendment governs alleged post-conviction constitutional violations asserted by inmates during the course of their incarceration.  *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (the Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners . . . where the deliberate use of force is challenged as excessive and unjustified.").  The Supreme Court also made clear in *Graham v. Connor* that excessive force claims are evaluated under the Fourth Amendment standard of reasonableness rather than the Fourteenth Amendment substantive due process standard.  490 U.S. at 395.  The court, then, evaluates plaintiff's excessive force claim under the Fourth Amendment objective reasonableness standard only, not the Fourteenth Amendment due process standard.  Summary judgment in favor of defendant Brame is granted on plaintiff's Eighth and Fourteenth Amendment claims.

Under the objective reasonableness standard set forth in *Graham v. Connor*, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id*. at

397. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. Relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97.

As will be explained, the court concludes based on the uncontroverted facts that defendant Brame did not use excessive force and that plaintiff has not established a constitutional violation. In reaching that conclusion, the court is particularly persuaded by the Tenth Circuit's decision in *Mecham v. Frazier*, 500 F.3d 1200 (10th Cir. 2007)—a case that neither party here has discussed. In that case, two Utah police officers pulled the plaintiff over as she was driving on the interstate for failing to wear a seat belt and driving five miles over the speed limit. *Id*. at 1202. During the stop, the plaintiff was uncooperative and repeatedly ignored the officers warnings and instructions, effectively turning "what should have been a routine encounter . . . into a fifty-minute ordeal." *Id*. at 1204. Even after she was given a warning to get out of her car or face arrest, she refused. *Id*. at 1203. Ultimately, the officers sprayed the plaintiff in the face with pepper spray, physically removed the plaintiff from the car, pulled her to the rear of the car, put her on the ground, and handcuffed her. *Id*. The plaintiff was taken to

the hospital where she was treated for pepper spray inhalation. *Id*. Afterwards, she was taken to jail where she was booked. All charges against the plaintiff arising from the incident were later dropped. *Id.*

On the officers' motion for summary judgment on the plaintiff's excessive force claim, the district court denied qualified immunity to the officers on the grounds that the question of whether the force used was objectively reasonable was one for the jury. *Id*. The Tenth Circuit reversed, concluding that the officers were entitled to qualified immunity based on the uncontroverted facts. *Id*. at 1204. Viewing the evidence in light of the *Graham* factors, the Circuit concluded that the officers' conduct was reasonable. *Id*. With respect to the plaintiff's efforts to resist arrest, the Circuit noted that she "balked" at the suggestion that her Arizona license was suspended but then denied the existence of her valid Utah license; persisted in using a cell phone during the stop despite the officers' instructions to put it down; ignored the officers' repeated warnings to get out of the car; remained in the driver's seat with the keys to the car, exercising control of the car at all times; ignored additional entreaties to exit the car; and refused when given a final opportunity to cooperate. *Id*. at 1204-05. With respect to safety concerns, the Circuit explained:

> The objective reasonableness of the use of force was further reinforced by safety concerns. The encounter played out on the narrow shoulder of a busy interstate highway. The arrest videotape depicts the busy, high speed traffic on Interstate Highway I–15. Parked on the shoulder, Mecham's car was just a few feet from the highway's edge. An officer could reasonably be concerned that Mecham might create a danger to herself or others if not first subdued. While Frazier did not believe she was a flight risk, the fact of the matter was that she had her keys and control of the car while refusing to cooperate. In sum, Mecham's disregard for the officers' instructions, the length of the encounter, and the implausibility of Mecham's rationale for not cooperating, lead us to conclude that the officers' use of force was justified in these circumstances.

*Id.* at 1205.

Although the Tenth Circuit noted that "one might have hoped for a different resolution" with the "benefit of hindsight," the fact remains that not "every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 1206 (quoting *Graham*, 490 U.S. at 396); *see also McNeil v. Anderson*, No. 07–6132, 2007 WL 4290495, at *3 (10th Cir. Dec. 7, 2007) (holding that the officer had not used unreasonable force when, during a routine traffic stop, the plaintiff "escalated the potential safety threat by failing to comply" with the officer's orders, "struggling" with the officer, and then "actively resisting arrest"); *Hinton v. City of Elwood*, 997 F.2d 774, 777 (10th Cir. 1993) (holding that an officer did not use excessive force by using an "electrical stun gun" on a man after grabbing him and wrestling him to the ground as he was actively resisting arrest, including kicking and biting the officers).

Looking at the facts of this case through the lens of *Graham* and with the benefit of *Mecham*, the court similarly concludes that defendant Brame did not use excessive force but used that amount of force necessary to overcome plaintiff's resistance and to keep her safe on the busy entrance ramp. Defendant Brame instructed plaintiff no less than seven times to exit the vehicle on her own. When she repeatedly ignored his instructions and told him to leave her alone, he gave her a final opportunity to exit the vehicle. When she again ignored his instructions, he pulled her from the vehicle as he had warned her that he would do. Because plaintiff was admittedly "trying not to go," defendant Brame placed his hand on the back of her neck, moved plaintiff to the rear of the vehicle and put her on the ground away from the flow of

traffic on the entrance ramp. To the extent defendant Brame pushed plaintiff to the ground, placed his knee in her back, put his weight on her, placed her in handcuffs, picked her up by her handcuffs and lifted her off the ground by her arms, plaintiff has not shown that he used more force than necessary to effectuate her arrest in light of the undisputed fact that she was resisting arrest and fighting defendant Brame during the encounter. In such circumstances, it is a "foregone conclusion" that defendant Brame "would have to use force to make the arrest." *Mecham*, 500 F.3d at 1205.

The level of force utilized by defendant Brame is further justified by safety concerns. The traffic stop occurred on the shoulder of a busy entrance ramp to a heavily traveled roadway during evening rush hour. The video shows the steady stream of vehicles traveling down the ramp at sufficient speed to enter the roadway safely. Plaintiff's car was parked just a few feet from the flow of traffic on the ramp. A reasonable officer could reasonably be concerned that plaintiff "might create a danger to herself or others if not first subdued." *Id.* This is true even after plaintiff was handcuffed and continued to try to twist away from defendant Brame while up against the hood of his patrol car.

In sum, plaintiff's disregard for defendant Brame's instructions, her consistent efforts to resist arrest and the safety concerns surrounding the stop lead the court to conclude that defendant Brame's use of force was objectively reasonable. Defendant Brame is entitled to qualified immunity on plaintiff's excessive force claim and the court need not reach the issue of whether the law was clearly established. Summary judgment on this claim is granted.

**IV.    State Law Claims**

16

With respect to her state law claims, plaintiff has invoked the court's supplemental jurisdiction under 28 U.S.C. § 1367 on the grounds that plaintiff's federal claims and her state law claims derive from a common nucleus of operative fact. While supplemental jurisdiction clearly exists in this case, the court may decline to exercise supplemental jurisdiction where, as here, it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c). The exercise of jurisdiction under § 1367 is a matter for the court's discretion, and the court is charged to act "in the manner that best serves the principles of economy, convenience, fairness and comity" that underlie supplemental jurisdiction. *See City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997). Because none of the parties have asked the court to decline to exercise supplemental jurisdiction, and because the parties have completed discovery and the trial of this matter is set for just over one month away, the court concludes that exercising supplemental jurisdiction in this case will further the interests of economy and convenience. The court, then, proceeds to consider the parties' arguments concerning plaintiff's state law claims.

As a threshold issue, the court turns to plaintiff's claims against the State of Kansas. As clarified in her response to defendants' motion for summary judgment, plaintiff is not asserting any federal claims against the State of Kansas. Rather, she asserts claims against the State under the Kansas Tort Claims Act on the theory that the State is liable for the wrongful acts of defendant Brame acting within the scope of his employment with the State and that the State is liable for its negligent training of defendant Brame. The State of Kansas moves for summary judgment on all of plaintiff's claims on the grounds that it is immune from suit under the Eleventh Amendment. The court agrees that the Eleventh Amendment bars plaintiff's claims

against the State, but dismisses those claims for lack of jurisdiction rather than granting summary judgment on the claims.

The Eleventh Amendment doctrine of sovereign immunity bars actions for damages against a State in federal court. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). Plaintiff appears to suggest that the State of Kansas has expressly consented to suit under K.S.A. § 75-6103 of the Kansas Tort Claims Act, which states that a governmental entity is liable for "damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the government entity, if a private person, would be liable under the law of the state." The KTCA, however, also states that "[n]othing in this section or in the [KTCA] shall be construed as a waiver by the state of Kansas of immunity from suit under the 11th amendment to the constitution of the United States." K.S.A. § 75–6116(g). By enacting the KTCA, the Kansas legislature has not waived Eleventh Amendment immunity from suit in federal court. *Jones v. Courtney*, 466 Fed. Appx. 696, 700-01 (10th Cir. Feb. 16, 2012) (Kansas retains its Eleventh Amendment immunity under the KTCA) (collecting cases). Plaintiff's claim against the State for negligent training or supervision is similarly barred. *See id.*; *Jones v. Wichita State Univ*., 2007 WL 926075, at *2 (D. Kan. Mar. 28, 2007). This court, then, lacks jurisdiction over plaintiff's claims against the State of Kansas and is required to dismiss those claims. [4]

---

[4] While it is not entirely clear to the court which claims, if any, plaintiff asserts against defendant Brame in his official capacity, those claims are similarly barred by the Eleventh Amendment because such claims are essentially asserted against the State and because plaintiff is not seeking any non-monetary relief in connection with any claims. *See Prager v. State Dept. of Revenue*, 271 Kan. 1, 31-32 (2001) (official capacity suits against state officials are barred by the 11th

## A.    False Imprisonment

Plaintiff asserts a common law claim against defendant Brame for false imprisonment under Kansas law.  False imprisonment or false arrest is "the restraint of the personal freedom of an individual without legal excuse by any words, acts, threats, or personal violence that under the circumstances the one being restrained fears to disregard."  *Mendoza v. Reno County*, 681 P.2d 676, 678 (Kan. 1984).  Defendant Brame moves for summary judgment on this claim on the grounds that he is entitled to discretionary immunity under the Kansas Tort Claims Act and, independently, he is legally excused for restraining plaintiff's personal freedom in light of plaintiff's lawful arrest.  Defendant Brame is entitled to summary judgment on both grounds.

The Kansas Supreme Court has squarely held that when a law enforcement officer has probable cause to arrest an individual and exercises his or her discretion in determining to arrest that individual, the officer is immune under the KTCA from liability for common law false imprisonment.  *See id*. at 678; *accord Soto v. City of Bonner Springs*, 166 P.3d 1056, 1060 (Kan. App. 2007) (quoting with approval the conclusion from the Texas Court of Appeals that "[a]n officer's decision regarding 'if, how, and when to arrest a person' is discretionary.").  Here, defendant Brame had probable cause to arrest plaintiff based on his personal observation that plaintiff was not wearing her seat belt and that at least one of plaintiff's minor children was not wearing a seat belt.  Plaintiff does not dispute that she was not wearing a seat belt and she advised defendant Brame on the video that one of her children was not buckled up.

---

Amendment unless those suits seek injunctive relief).  The court, then, dismisses all claims asserted against defendant Brame in his official capacity.

The crimes for which defendant Brame arrested plaintiff—violations of K.S.A. § 8-2503 (requiring adults to wear safety belts) and K.S.A. § 8-1345 (requiring driver to protect children in vehicle by using safety belts or child safety restraining system)—are clearly arrestable offenses as they are misdemeanors under the pertinent statutory scheme. K.S.A. § 21-5102 states that "crimes are classified as felonies, misdemeanors, traffic infractions and cigarette or tobacco infractions." Pursuant to that statute, "[a] traffic infraction is a violation of any of the statutory provisions listed in subsection (c) of K.S.A. 8-2118, and amendments thereto." K.S.A. § 21-5102(b). The statute further explains that "[a]ll other crimes are misdemeanors." *Id*. § 21-5102(d). Neither K.S.A. § 8-2503 nor K.S.A. § 8-1345 are listed in K.S.A. § 8-2118 (the uniform fine schedule for traffic infraction violations) or the amendments thereto. Under K.S.A. § 21-5102(d), then, those crimes are misdemeanors. *Mendoza*, then, mandates that defendant Brame is immune from liability for any false arrest or false imprisonment of plaintiff. *See Beattie v. Smith*, 2013 WL 467297, at *4-5 (D. Kan. Feb. 7, 2013) (dismissing false arrest case under *Mendoza* where officer had probable cause to arrest plaintiff).[5]

Defendant Brame is also entitled to summary judgment because the existence of probable cause for making an arrest is a complete defense to an action for false arrest. *Fillmore v. City of Osage City, Kansas*, 2011 WL 1118570, at *10 (D. Kan. Mar. 25, 2011). In fact, standing alone, the fact that plaintiff committed the misdemeanor seat belt violations in defendant

---

[5] Inexplicably, plaintiff's motion for summary judgment seeking a determination that K.S.A. § 8-2503 and K.S.A. § 8-1345 are traffic infractions rather than misdemeanors contains no reference whatsoever to K.S.A. § 21-5102 or K.S.A. § 8-2118. She relies instead on the fact that the seat belt statutes themselves contain no language indicating that the crimes identified therein are misdemeanors. For the reasons set forth in the text of this opinion, plaintiff's motion for summary judgment on this issue is denied.

Brame's presence provides defendant Brame with a complete defense to plaintiff's claim. *See* PIK Civil 4th 127.22 (A legal excuse to an action for false imprisonment exists when a law enforcement officer arrests a person when "any crime, except a traffic infraction, has been or is being committed in the officer's view."). As noted previously, defendant observed both plaintiff and a minor child not wearing seat belts and these facts are not disputed. Probable cause for the arrest clearly existed.

For the foregoing reasons, the court grants summary judgment in favor of defendant Brame on plaintiff's false imprisonment claim.

B.      *Battery*

Plaintiff has also asserted a claim for common-law battery against defendant Brame based on defendant Brame's harmful, physical touching of plaintiff while he attempted to place her under arrest. Under Kansas law, battery is defined as "the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive." *Baska v. Scherzer*, 156 P.3d 617, 622 (Kan. 2007) (citations omitted). "The gravamen of a civil . . . battery is grounded upon the actor's intention to inflict injury." *Id.*; *accord Thomas v. Benchmark Ins. Co.*, 179 P.3d 421, 434-35 (Kan. 2008) (if plaintiff's injury is unintended, then conduct in question sounds in negligence rather than intentional tort of battery). Defendant Brame asserts that he is entitled to summary judgment on this claim because plaintiff fails to allege that defendant Brame intended

to injure plaintiff and, in any event, defendant Brame's use of force was privileged or justified. The court agrees that summary judgment is appropriate for these reasons.[6]

Neither in the pretrial order nor in her submissions does plaintiff allege that defendant Brame intended to injure her when he physically touched her to effectuate the arrest. In the pretrial order, she alleges that defendant Brame touched her "with the intention of having physical contact" with plaintiff "in a rude, angry and offensive manner." In her response to the motion for summary judgment, plaintiff contends that defendant Brame "clearly touched [plaintiff] intentionally and was rude, angry and offensive when he did so." In the absence of any evidence (or, for that matter, any allegation) that defendant Brame intended to injure plaintiff, summary judgment is warranted on this claim. *See Stricklin v. Parsons Stockyard Co.*, 388 P.2d 824, 828-29 (1964) (amended petition was not susceptible to an interpretation that the defendant intentionally inflicted the plaintiff's injuries and, accordingly, it stated a cause of action founded on negligence rather than battery).

Moreover, defendant Brame's physical contact with plaintiff was privileged or justified under the circumstances presented in that defendant Brame, as a matter of law, used a reasonable amount of force to meet plaintiff's resistance and to control the situation. Defendant Brame, then, cannot be held liable for civil law battery under Kansas law. *See Elrod v. Walker*, 2011 WL 6372881, at *10 (D. Kan. Dec. 20, 2011) (law enforcement officers not liable for civil battery during an arrest unless they use unreasonable force); *Dauffenbach v. City of Wichita*, 657 P.2d 582, 587-88 (Kan. App. 1983) ("The general rule is that a law enforcement officer who is

---

[6] The court, then, declines to address defendant Brame's additional argument that he is entitled to discretionary immunity under the Kansas Tort Claims Act with respect to plaintiff's battery claim.

making an arrest for a misdemeanor committed in his or her presence has the right to use reasonable force to effect the arrest.").

C.      *Intentional Infliction of Emotional Distress*

In the pretrial order, plaintiff alleges both that defendant Brame intentionally caused plaintiff severe emotional distress and that he intentionally caused her children severe emotional distress. While defendant Brame suggests that he is entitled to discretionary immunity under the KTCA with respect to these claims, he has not explained how the KTCA might apply to such claims and the court doubts that KTCA immunity applies to such claims. *See Nielander v. Board of County Commr's of County of Republic, Kansas*, 582 F.3d 1155, 1170-71 (10th Cir. 2009) (government employees not entitled to immunity under KTCA for willful or intentional actions). Nonetheless, defendant Brame is entitled to summary judgment on the merits of plaintiff's claims for intentional infliction of emotional distress.

To establish a cause of action for intentional infliction of emotional distress (or outrage) under Kansas law, a plaintiff must show that the conduct of the defendant was intentional or in reckless disregard of the plaintiff; the conduct was extreme and outrageous; a causal connection exists between the defendant's conduct and the plaintiff's mental distress; and the plaintiff's mental distress is extreme and severe. *Roberts v. Saylor*, 637 P.2d 1175, 1179 (Kan. 1981). As explained by the Kansas Supreme Court in *Roberts*, liability for the tort of outrage "may be found only in those cases where the conduct has been so outrageous in character, and so extreme in degree, as to be beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.*

Based on the court's conclusions that no constitutional violation occurred in this case and that defendant's conduct in arresting and effecting the arrest of plaintiff was lawful and reasonable for Fourth Amendment purposes, it would be incongruous for the court to find that the same conduct amounted to an extraordinary transgression of the bounds of decency so as to give rise to an intentional infliction of emotional distress claim. While plaintiff's arrest and the manner in which defendant Brame effected that arrest were undoubtedly upsetting to plaintiff, no reasonable jury could conclude that defendant Brame's conduct was utterly intolerable in a civilized society as to require the law to intervene. Summary judgment on these claims is granted. *See Lopez-Aguirre v. Board of County Commr's of Shawnee County, Kansas*, 2013 WL 1668239, at *12 (D. Kan. Apr. 17, 2013).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for summary judgment (doc. 44) is denied; defendants' motion for summary judgment (doc. 46) is granted in part and denied in part; defendants' motion to strike and for sanctions (doc. 55) is denied; and defendants' unopposed motion to continue trial (doc. 60) is moot. To the extent defendants' motion for summary judgment is denied, those claims are dismissed for lack of jurisdiction.

**IT IS SO ORDERED.**

Dated this30th  day of September, 2013, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge